IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 24-cr-00308-JLK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

WESLEY CHAMBERS,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER ON SENTENCING

Kane, J.

      This matter is before me for sentencing of Defendant Wesley Chambers, following his plea of guilty to two counts of production of child pornography and one count of possession of child pornography. I held a sentencing hearing for Mr. Chambers and heard presentations of counsel. During this hearing, Mr. Chambers was afforded his right of allocution. Several individuals exercised their right to make Victim Impact Statements pursuant to the Crime Victims' Rights Act, 18 U.S.C. §§ 3771(a)(4) and (e)(2)(B), and their remarks were well received.

      Based on my review of the Plea Agreement (ECF No. 62), Presentence Investigation Report ("PSR") (ECF No. 68), the Addenda to the PSR (ECF Nos. 69 and 75), the Motion for Non-Guideline Sentence Pursuant to 18 U.S.C. § 3553(a) filed by Mr. Chambers (ECF No. 66) and the Prosecution's Response (ECF No. 70), the Motion for Decrease for Acceptance of Responsibility filed by the Prosecution (ECF No. 71), and the Sentencing Statement filed by the

1

Prosecution (ECF No. 67), I sentenced Mr. Chambers in open court. During the hearing, Count 3 of the Indictment was DISMISSED, consistent with the Prosecution's motion. *See* ECF No. 72. The following written order provides further explanation of my sentencing decision and resolves the pending motions.[1]

## I.    Introduction

On October 22, 2024, a four-count indictment was issued against Mr. Chambers, charging him with three counts of production of child pornography and one count of possession of child pornography. The Indictment also included a forfeiture allegation. On July 23, 2025, Mr. Chambers pleaded guilty to three counts of the Indictment: Counts 1 and 2 for production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and Count 4 for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2); he similarly admitted the Indictment's forfeiture allegation.

## II.    The Advisory Sentencing Guidelines

The advisory Sentencing "Guidelines should be the starting point and initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). To determine the applicable sentencing range, I consider the PSR, any objections made by the parties, and the parties' sentencing statements and motions. *See Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016). I have the "discretion to depart from the Guidelines, [but I] 'must consult those Guidelines and take them into account when sentencing.'" *Id.* (quoting *United States v. Booker*,

---

[1] The Prosecution filed an Objection to the initial PSR. *See* ECF No. 65. I have reviewed the Objection and, as explained below, it is overruled as moot.

543 U.S. 220, 264 (2005)). Thus, I am obligated to review the advisory Sentencing Guidelines range, but I am not obligated to follow that range.

Before the sentencing hearing, a Probation Officer calculated Mr. Chambers's sentencing range pursuant to the Sentencing Guidelines. PSR ¶¶ 64-81. The Probation Officer grouped the offense-level calculation for the three counts Mr. Chambers pleaded guilty to because the counts involved the same victim and the acts were connected by a common criminal objective. *See* U.S.S.G. § 3D1.2. Under the Sentencing Guidelines, the base offense level was calculated as 32. The Probation Officer applied the following enhancements: a four-level increase pursuant to U.S.S.G. § 2G2.1(b)(1)(A), a four-level increase pursuant to U.S.S.G. § 2G2.1(b)(2)(B), a four-level increase pursuant to U.S.S.G. § 2G2.1(b)(4)(A), and a two-level increase pursuant to U.S.S.G. § 2G2.1(b)(5). After those enhancements, the Probation Officer calculated the adjusted offense level as 46. The level was increased by five levels because the offense is a covered sex crime, and Mr. Chambers engaged in a pattern of activity involving prohibited sexual conduct, making him "a repeat and dangerous sex offender against minors." PSR ¶ 75; *see* U.S.S.G. § 4B1.5(b)(1). This five-level enhancement increased the offense level to 51. The Probation Officer further included a three-level decrease for acceptance of responsibility.

After applying the three-level downward adjustment under U.S.S.G. §§ 3E1.1(a) and (b) based on Mr. Chambers's acceptance of responsibility, the offense-level calculation in the PSR was 48. The Sentencing Guidelines provide that, "[i]n rare cases, a total offense level of . . . more than 43 may result from application of the guidelines. . . . An offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. §5A n.2. Thus, the Probation Officer calculated the total offense level for Mr. Chambers as 43. Combined with Mr. Chambers's Criminal History Category of I, the Sentencing Guidelines imprisonment range was determined to be life

imprisonment. This is above the statutorily authorized maximum sentences for each of the three counts to which Mr. Chambers pleaded guilty. Thus, the Probation Officer calculated, under U.S.S.G. § 5G1.2(b), the Sentencing Guidelines term of imprisonment to be 840 months.

The Prosecution objected to the Probation Officer's offense-level calculation in the initial PSR. *See* Resp. & Obj. to PSR, ECF No. 65. The Probation Officer agreed with the Prosecution's objection and revised the offense-level calculation in the final PSR. *See* Addendum to PSR, ECF No. 69. Therefore, the Prosecution's objection is OVERRULED as MOOT, and no objections remain. As I informed Mr. Chambers during his Initial Status Conference, I consider the advice of the Sentencing Guidelines, but I am not bound by that advice; I impose a sentence the exact same way regardless of whether a defendant chooses to plead guilty or to go to trial. Thus, the Prosecution's Motion Under U.S.S.G. § 3E1.1(b) for 1-Level Reduction of Defendant's Offense Level for Acceptance of Responsibility, ECF No. 71, is DENIED. After reviewing the facts outlined in the Plea Agreement and the PSR, I accept the offense-level adjustments and calculation as submitted in the PSR.

In this case, as I have informed Mr. Chambers and the Prosecution, I will not base my sentence on the advisory Sentencing Guidelines. These—not binding—guidelines promulgated by the U.S. Sentencing Commission do not clearly tie their prescribed penalties to the statistical analysis on which they are purportedly based. Furthermore, as I have noted many times before, the Guidelines' assurances—that individual defendants' qualitative factors are adequately incorporated into sentencing determinations under the Guidelines—are uncompelling. I agree with Judge Rakoff that,

> Perhaps the most fundamental flaw in the Sentencing Guidelines is that they are based on the assumption that you can, in the name of reducing disparities, isolate

> from the complexity that every sentence presents a few arbitrary factors to which you then assign equally arbitrary weights— and somehow call the result "rational."
>
> The numbers themselves are drawn from nowhere. Indeed, the Sentencing Commission to this day has never been able to articulate why they assign 2 points for this, or 4 points for that; these are just numbers, and yet, once they are in place, the whole thing is blessed and said to be both reasonable and necessary.

Jed S. Rakoff, "Why the Federal Sentencing Guidelines Should be Scrapped," 26 Fed. Sent'g Rep. 1, 2013 WL 8171733, at *6 (Oct. 1, 2013).

I am obligated under the U.S. Constitution to perform judicial duties, not clerical tasks. A defendant is a person and not the result of a formula. Mr. Chambers and the public are entitled to a decision based on facts and law, not on the conjectural, arcane Sentencing Guidelines. The sentence I impose constitutes an assessment of Mr. Chambers himself, including his conduct and history, not simply where he lands on a chart. I will base Mr. Chambers's sentence on a full consideration of the applicable statutes and the 18 U.S.C. § 3553(a) criteria. I requested that counsel prepare their arguments accordingly, and they did so. Thus, Mr. Chambers's argument against U.S.S.G. § 2G2.1, *see* Defendant's Motion for Non-Guideline Sentence at 6-11, is well taken but not necessary to address. The Sentencing Guidelines range was accurately calculated by the Probation Officer, but I am not bound by the Guidelines, nor do I intend to base my sentence on the Guidelines.

### III.    Application of § 3553(a) Factors

The Sentencing Guidelines term of imprisonment is 840 months. The Probation Officer recommends a sentence of 420 months of imprisonment—360 months for Count 1, 360 months for Count 2 (served concurrent to Count 1), and 60 months for Count 4 (served consecutive to Counts 1 and 2)—10 years of supervised release, no fine, a $100 special assessment for each of

the three counts, a $10,000 assessment under the Justice for Victims of Trafficking Act (JVTA),[2] and a $15,000 assessment under the Amy, Vicky, and Andy Child Pornography Assistance Act (AVAA). *See* PSR Ex. A. The Prosecution argues Mr. Chambers should receive a 720-month sentence under the § 3553(a) factors. *See* Gov.'s Sentencing Statement, ECF No. 67. Mr. Chambers argues he should receive a 360-month sentence and 10 years of supervised release under the § 3553(a) factors. *See* Def.'s Mot. for Non-Guideline Sentence Pursuant to 18 U.S.C. § 3553(a).

There are two applicable statutes here. First, 18 U.S.C. § 2251(a) and (e) for production of child pornography applies to Counts 1 and 2. For each count, the statute requires not less than fifteen years (180 months) but not more than thirty years (360 months) of imprisonment as well as a term of supervised release not less than five years and up to a term of life. The second statute, 18 U.S.C. § 2252A(a)(5)(B), (b)(2) for possession of child pornography, applies to Count 4. This statute requires not more than ten years (120 months) of imprisonment as well as a term of supervised release not less than five years and up to a term of life. The statutory fine for each count is $250,000. There is a $100 special assessment for each count and up to a $50,000 special assessment per the AVAA for these counts. With these statutory provisions in mind, I turn to my analysis of the § 3553(a) factors.

---

[2] The JVTA established an additional special assessment of $5,000 "on any non-indigent person or entity convicted of an offense" under specific statutes, including sexual exploitation and other abuse of children. 18 U.S.C. § 3014(a)(3). The statute required the assessments to "end[] on September 30, 2025." § 3014(a). The United States Congress has allowed the federal government's funding to lapse and similarly allowed the JVTA special assessment authorization to lapse. While it is possible that Congress will reauthorize the JVTA special assessment, as of the date of this sentencing it is not lawful for me to assess this on Mr. Chambers.

Section 3553(a) requires me to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public, and to provide the defendant with training, care, or treatment in the most effective manner. Under the statute, I am further directed to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable Sentencing Guidelines, and the need to avoid unwarranted sentencing disparities. The stated criteria often clash, but they must be balanced against each other. The purpose of this balancing process is to ensure Mr. Chambers receives a just, appropriate, and deserved sentence based on his actions.

*Nature and Circumstances of the Offense*

Mr. Chambers pleaded guilty to two counts of production of child pornography and one count of possession of child pornography. These are especially serious crimes. The facts stipulated by the parties in the Plea Agreement are summarized below.

On September 24, 2024, Federal Bureau of Investigation ("FBI") agents executed warrants, which authorized the search of Mr. Chambers's person, his vehicle, and his home. FBI agents contacted and interviewed[3] Mr. Chambers outside of his place of employment. During this interview, Mr. Chambers stated that he engaged in multiple forms of sexual contact with Minor #1, a child he had access to on weekends, beginning when the child was seven or eight years old. He specified that he sexually abused Minor #1 beginning when she was seven or eight years old and continuing through to when she was thirteen years old. Mr. Chambers digitally penetrated

---

[3] Mr. Chambers disputes the interview was consensual. *See* Plea Agreement at 12 n.5.

her vagina, performed oral sex on her, put objects in her vagina, and attempted—but did not succeed—to engage in vaginal penetration with his penis. Furthermore, Mr. Chambers regularly penetrated Minor #1's anus for his sexual gratification beginning when she was around nine years old.

Mr. Chambers explained that Minor #1 took sleeping medication—which he administered to her—and he would penetrate her anus when he believed she was asleep. Mr. Chambers admitted to the FBI agents that he recorded his abuse in both videos and photos, which were located on his Samsung phone. He stated that he also used the phone to access child pornography on the dark web, including "hurtcore"[4] websites, and he had been collecting child pornography for at least thirteen years. He informed the FBI agents they would locate the phone under the pillow on his bed at home, and he provided the passcode. During this interview with the FBI, Mr. Chambers called his mother and told her, "I'm a pedophile and I collect child pornography." He further informed the agents that he followed children on Instagram, including "kid gymnastics," because he hoped to see "something." He similarly took photos of Minor #1 while she was sitting on the couch with her legs up.

FBI agents located the Samsung phone and took it to Mr. Chambers, who was still being interviewed by other FBI agents. He directed the agents to the location on his phone where most of the photos and videos of his sexual abuse of Minor #1 were located. The folder was entitled "My creation," and Mr. Chambers stated all the photos and videos in that folder were of him and Minor #1. He also indicated there were additional sexually explicit photos and videos he created

---

[4] According to the Plea Agreement, "hurtcore" is a "genre of child pornography that depicts children being tortured or humiliated, in pain or distress, or otherwise being subjected to violence." Plea Agreement at 13 n.6.

of Minor #1 located in the phone's photo gallery. After analysis, investigators identified 158 photographs and 49 videos of child pornography on the Samsung phone, including numerous videos of Mr. Chambers anally penetrating Minor #1. Mr. Chambers generated prolifically the content of his sexual abuse of Minor #1; he created these photos and videos on fifty-four separate dates—with all but one taken late at night or early in the morning—spanning from 2022 through 2024, with Minor #1 appearing asleep or unconscious. The most recent video recovered on the phone had a creation date of July 20, 2024. Mr. Chambers organized these files on his phone into folders such as "Spreading Her," "Favorite hole," and "Unsorted chaos."

The internet search history on Mr. Chambers's Samsung phone indicated Mr. Chambers was searching for information on stronger sleep medication and sex positions. On June 27, 2024, for example, Mr. Chambers searched for "best and easiest position for virgin.girl" and accessed a site related to that search. Similarly, on two occasions—June 30 and July 1, 2024—Mr. Chambers searched for "strongest prescription sleeping pills names," and for information on the effects of those medications.

Minor #1 was interviewed two times: once in September 2024 and once in October 2024. She was thirteen years old at the time of both interviews. She stated that she took medication to sleep and normally took one blue pill and one white pill. While she was at Mr. Chambers's home, however, he would give her two of each. She also explained that she always slept in Mr. Chambers's bed with him while she was at his home and would sometimes wake up without her underwear on. Mr. Chambers would tell her that she took them off in her sleep. She informed the interviewer that she did not remember anything happening to her body.

Agents also located more than 20,000 child pornography photos and 2,500 child pornography videos on Mr. Chambers's Samsung phone. These were organized in folders on the

phone and did not depict Minor #1. Some of the photos and videos include the depiction of children including prepubescent girls who appeared to be ten and twelve years old. Mr. Chambers also organized these child pornography materials into explicitly named folders, such as "10BlondeSupermodel."

It serves no purpose to further describe Mr. Chambers's actions against Minor #1, which he recorded, or the child pornography he searched for, accessed, and saved to his Samsung phone beyond what I have described above. The photos and videos of Minor #1 and other minors are explicit images, organized in graphically named folders by Mr. Chambers for his own sexual gratification. There is no evidence that Mr. Chambers distributed his photos and videos of Minor #1, but the fact remains that he did produce the photos and videos depicting his acts against her.

*History and Characteristics of the Defendant*

As of the date of sentencing, Mr. Chambers is thirty-four years old; he completed the tenth grade and, while he has not obtained a high school diploma, he appears to have a consistent work history. He enjoyed a "normal for the most part" childhood and was close with his family. His father was in the military, which resulted in his family moving often. His parents did not appear to struggle financially, and Mr. Chambers did not witness or experience abuse between or from his parents. His family typically ate dinner together every night and went on camping and fishing trips together. When he was about ten years old, however, he witnessed his sister being sexually abused by an older boy. Mr. Chambers stated that this was the most traumatic event in his life. He also reported that when he was a child, he had friends who exposed him to sexual touching, through playing "doctor," and that he began to "fool around" with a family member after those friends moved. PSR ¶ 97.

Mr. Chambers does not have any previous criminal history. The actions he took which led to this criminal case, however, continued for at least thirteen years. First, he admitted that he has collected child pornography for "as long as he could remember—at least thirteen years." Plea Agreement at 13. In the more than 22,500 photos and videos found on his phone, Mr. Chambers's actions involved possibly thousands of exploited children. Second, he admitted that he sexually abused Minor #1 beginning when she was seven or eight years old until she was thirteen years old. Minor #1 was regularly in Mr. Chambers's care on weekends. Her medical care, namely her prescription sleep medication, was entrusted to Mr. Chambers. And Mr. Chambers abused that trust by giving her twice the prescribed amount so that he could engage in his years-long sexual abuse. Similarly, as a person in a position of trust, he betrayed his role in Minor #1's life. Further detail is not necessary. Suffice it to say a grievous aggravating aspect of his crimes involving Minor #1 is the fact that his sexual molestation constituted repeated acts of incest.

He stopped his sexual abuse because he moved residences approximately one month before the FBI arrested him. Mr. Chambers attempted to protect himself from being caught. For example, according to medical records, Minor #1 "stated that [Mr. Chambers] told her what he was doing was illegal and if she told anybody he would go to jail." PSR ¶ 55. He also posted on "Alice in Wonderland," described below, that he would not share his content of Minor #1 because he did not "want the heat." PSR ¶ 27. Although Mr. Chambers lacks a criminal history, the evidence in this case—including his own admissions—suggests that this is only because he was not caught by the authorities until more than a decade after he began engaging in these crimes.

Mr. Chambers accessed and participated in a Tor network hidden service website, "Alice in Wonderland," which "functions as a website dedicated to the advertisement and distribution of child sexual exploitation material." PSR ¶ 26. His profile indicated his age of attraction was four to eleven years old. He did not appear to post images of child pornography, but he did create multiple posts telling stories in the first person that described sexual abuse of children, including Mr. Chambers's family members. When he was asked about the posts on Alice in Wonderland, he claimed all the posts were for clout or "fluff" but later admitted to parts of the stories. An investigator read him part of a post that claimed he had anal sex with Minor #1 since she was five years old. He stated the whole post was false and that his sexual contact with Minor #1 was "next to nothing." PSR ¶ 40. The stipulated facts in the Plea Agreement and further statements from Mr. Chambers tell a different story, and these stories Mr. Chambers posted on the internet brag about his own sexual abuse and exploitation of children.

Mr. Chambers states witnessing his sister's sexual assault was the most traumatic event in his life. I do not doubt the truth of this statement. But he has since sexually abused Minor #1, likely causing her a lifetime of trauma, and produced many photos and videos of her abuse. He further bragged about his exploitation of Minor #1 on the internet. I do not minimize that Minor #1 is not the only victim in this case. Mr. Chambers possessed more than 20,000 child pornography photos and 2,500 child pornography videos that involve children other than Minor #1. Each child depicted in these images is a victim of Mr. Chambers's crimes as well.

Mr. Chambers states that he is "deeply remorseful," Defendant's Motion for Non-Guideline Sentence at 3, but he does not produce any mitigating evidence to demonstrate this remorse or an understanding of his actions' consequences that would be necessary to reflect that remorse. His Motion states that he will receive treatment, but is he engaged in any treatment

while awaiting sentencing? Has he been evaluated by a mental health professional? Given the inconsistencies throughout his PSR, without specific evidence of remorse for such heinous conduct, I am not swayed.

*The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

"[T]he use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. 747, 758 (1982). "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the child] in future years, long after the original misdeed took place."[5] Even if the child pornography is not affirmatively known to be circulating, there is the victim's fear that the recording could be viewed by others. *See, e.g.*, Shouvlin, supra n.5.

Consumers of child pornography create a demand for further production of child pornography. Here, Mr. Chambers was both a producer and consumer of child pornography. He took photos and videos—even commentating the videos—of his sexual abuse of Minor #1, including anal penetration and penetrating her vagina with objects, between 2022 and 2024. These photos and videos were found on his Samsung phone. He also amassed a collection of child pornography and admitted to accessing so-called hurtcore websites for his own sexual gratification.

---

[5] Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L. Rev. 535, 545 (1981).

The devastating impacts on Minor #1 and the other minor victims in this case cannot be understated. As I explained in another case,

> Forensic pediatricians such as Sharon W. Cooper, M.D., provide powerful and convincing evidence that the children who have been exploited to satisfy this perversion suffer long-term devastating effects. Dr. Cooper writes that the images of this kind of child abuse carry with them lasting feelings of guilt, self-blame and shame for children above the ages of 4-5 years. Moreover, such victimization produces eating disorders such as bulimia, anorexia nervosa and obesity and increases the risk for diabetes, heart disease and stroke. More obvious, the sequelae include numerous mental health problems of which the three most common are depression, anxiety, and posttraumatic stress disorder. Other losses include out of home placement, transience, poor academic performance, greater risk for deviant sexual behavior, substance abuse, mental dysfunction, self-inflicted injuries, increased risk taking, and suicide. Female victims are 28 times more likely in adulthood to be arrested for prostitution. These ruinous effects justify proscription and deterrence as essential societal objectives.

*United States v. Cheever*, No. 15-CR-00031-JLK, 2016 WL 3919792, *7 (D. Colo. July 18, 2016). The consequences of Mr. Chambers's actions go beyond his prison sentence: his actions will impact Minor #1 physically, psychologically, and emotionally and will similarly impact each child exploited in the more than 22,500 photos and videos he possessed. "[T]he revulsion widely felt about crimes involving child pornography is exacerbated by the utter lack of empathy shown to the child victims by the offenders. That callousness alone is a factor that increases the proportional measure for punishment." *Id.* Mr. Chambers may claim that he loves Minor #1 and never wanted to cause her pain, *see* PSR ¶ 27, but he does not respect her or even recognize her fundamental humanity, which is clear through the years-long drugging and assaults he chose to perform on her for his own sexual gratification.

*The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant*

Mr. Chambers has been collecting child pornography for "as long as he could remember," for at least thirteen years. PSR ¶ 12. Mr. Chambers's internet search history, described above, shows that he did not intend to stop his abuse of Minor #1: he stopped only because he was arrested. Mr. Chambers admitted to touching another child, *see id.* ¶¶ 44-45, and fantasizing about touching children, which never came to fruition *not* because of concern for others but because "he had no access or opportunity to do so," *id.* ¶ 12. Mr. Chambers's consumption of so-called hurtcore child pornography reflects that he enjoyed watching children being tortured or humiliated, in pain or distress, or otherwise being subjected to violence. There is a dire need to deter this conduct and protect the public, especially its most vulnerable members, from further crimes of this nature.

Given his admission that he did not touch other children because he did not have access to them, the risk of recidivism is high without proper treatment. Mr. Chambers argues for a 360-month sentence partially because "recidivism rates decline relatively consistently as age increases." *Id.* at 5 (footnote omitted). The Prosecution notes that recidivism rate for sex offenders is difficult to determine. *See, e.g.*, Gov.'s Resp. to Def.'s Mot. for Non-Guideline Sentence at 2-4, ECF No. 70. For example, Elizabeth L. Jeglic Ph.D., a clinical psychologist and a professor of psychology at John Jay College who studies sexual violence prevention, estimates that "only 1 in 250 cases of CSA are reported to police or child protective services."[6] Her studies

---

[6] Elizabeth L. Jeglic Ph.D., *Understanding Delayed Disclosure of Child Sexual Abuse*, Psychology Today (June 21, 2023), https://www.psychologytoday.com/us/blog/protecting-children-from-sexual-abuse/202306/understanding-delayed-disclosure-of-child-sexual.

15

"show that CSA is not only under-disclosed, but also under-reported," especially when the victim is younger or the perpetrator is a family member or someone the child knows. *Id.* Most convincing is a study cited by the Prosecution that found "[w]hen compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that pedophiles offend in their later years at a greater rate than other sexual offenders." Gov.'s Resp. to Def.'s Mot. for Non-Guideline Sentence at 2 (citation omitted). Because of the significant under-disclosure and under-reporting of sexual abuse experienced by children combined with the general traits of these perpetrators, I cannot agree that Mr. Chambers poses a low risk of recidivism. Based on my understanding of contemporary sentencing materials, I am inclined to agree with the Prosecution.

It is an understatement to say I disagree with Mr. Chambers's assertion that, because he is "an offender without a single criminal history point, [he] presents only a little more than 10% risk of recidivism the first 24 months after release." Def.'s Mot. for Non-Guideline Sentence at 4. Mr. Chambers did not suddenly—in an isolated episode—decide to sexually abuse and record his abuse of Minor #1. Rather, Mr. Chambers engaged in such criminal activity for more than a decade; he drugged and recorded his sexual abuse of Minor #1 for at least six years before he was caught. Similarly, he did not recently decide to start consuming and collecting child pornography; he engaged in this activity for more than a decade. It is true that before he was arrested in this case, he did not have a criminal history record. But he has admitted to a years-long engagement in these crimes. The need for adequate deterrence and to protect the public is high.

*The Need for the Sentence Imposed to Provide the Defendant with Training, Medical Care, or Treatment in the Most Effective Manner*

Briefly, as indicated above, Mr. Chambers requires psychological care and treatment. While there is no evidence that he has been diagnosed with pedophilia, he has self-identified in this way. He claims that he needs help. Whether that sentiment is sincere or not, a prison sentence served in a facility with appropriate treatment programs is necessary.

*Applicable Advisory Sentencing Guidelines*

Although, again, I am not bound by it, I determined the Sentencing Guidelines calculation above. It is only in "rare" instances that an individual's Sentencing Guidelines range goes beyond level 43. This rare instance applies to Mr. Chambers. The number of enhancements applicable to his crimes tallied his Guidelines range well past 43—to 51, before any downward adjustments—and, if the criminal statutes he pleaded guilty to breaking did not include maximum sentence lengths, he would be facing life in prison. Thus, the Guidelines here are superseded by the statutorily authorized sentences for each count: leading to a Sentencing Guidelines term of imprisonment of 840 months.

*Need to Avoid Unwarranted Sentencing Disparities*

The purpose of the advisory Sentencing Guidelines is "to eliminate disparities among sentences nationwide." *United States v. Zapata,* 546 F.3d 1179, 1194 (10th Cir. 2008). "A sentence within a Guideline range 'necessarily' complies with 18 U.S.C. § 3553(a)(6)." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).

Mr. Chambers argues that a sentence beyond 360 months would fall out of step with the sentencing decisions of my esteemed colleagues. I disagree. Mr. Chambers drugged Minor #1, a close relative of his, and took photos and videos of himself penetrating her anus with his penis, penetrating her vagina digitally and with various objects, all while she was unconscious. He committed these crimes against Minor #1 for at least six years, nearly half of her life. He also collected and fed the demand for child pornography for at least thirteen years, causing the identified minor victims in those cases to know yet another person has sexually enjoyed their exploitation. The actions that led him here today were egregious and, indeed, among the most despicable to be revealed in my court.

Although comparing individual defendants is of limited utility, it nevertheless clarifies the absence of disparate sentencing. Accordingly, I will distinguish between Mr. Chambers's actions and the cases he cites to support his Motion for a non-guideline sentence.

- *United States v. Evans*, 12-cr-00325-WJM. Mr. Chambers states that the defendant in this case sexually abused three minor victims, which resulted in a 252-month sentence when faced with a statutory maximum of 360 months. What Mr. Chambers fails to address is that Mr. Evans pleaded guilty to one count of violating 18 U.S.C. § 2251(a), production of child pornography, involving two minor victims. By contrast, Mr. Chambers has pleaded guilty to three separate counts: two counts of violating 18 U.S.C. § 2251(a) and (e), Production of Child Pornography, and one count of violating 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), possession of child pornography.

- *United States v. Bourret*, 20-cr-00289-WJM. Mr. Chambers states that the defendant in this case sexually abused two minors and produced images of the abuse, which resulted in a 272-month sentence when faced with a statutory maximum of 360 months. Similar to *Evans*, Mr. Bourret pleaded guilty to one count of violating 18 U.S.C. § 2251(a) and (e), production of child pornography, related to engaging in sexual abuse of one child and producing images of that child and one other.

- *United States v. Neisler*, 19-cr-00150-RM. Mr. Chambers states that the defendant in this case sexually abused and secretly recorded the abuse of five minor victims, which resulted in a 276-month sentence when faced with a statutory maximum of

360 months. Like Mr. Chambers, Mr. Neisler was in a position of trust with his victims. Unlike Mr. Chambers, however, Mr. Neisler's child pornography production guilty plea was based on his creation of between five to sixteen videos and did not involve drugging the victims or engaging in anal penetration beyond a finger. Mr. Chambers, on the other hand, pleaded guilty to producing 49 videos and 158 photographs of Minor #1 and collecting more than 22,500 child pornography photos and videos of other children.

With these distinctions in mind, I impose my sentence.


## IV.    Sentence

Under the applicable statutes, Mr. Chambers faces an 840-month sentence. He pleaded guilty to two counts of production of child pornography and one count of possession of child pornography. Based on my analysis of the § 3553(a) factors, it is the judgment and order of this Court that Mr. Wesley Chambers is sentenced to a term of 600 months of imprisonment: 258 months for Count 1, 258 months for Count 2, and 84 months for Count 4; each to be served consecutively. He is hereby committed to the custody of the U.S. Bureau of Prisons. It is the strong recommendation of this Court that while incarcerated, Mr. Chambers should participate in every sex offender treatment program offered by the facility. I also recommend that he be placed in FCI Marion or a similar facility that has specific care and treatment programs for sex offenders.

Upon release from imprisonment, Mr. Chambers shall be placed on supervised release for a term of life. The mandatory, standard, and special conditions of his supervised release are outlined below. The recommendation in the PSR that I impose five years of supervised release is made without reason or justification and is consequently rejected.

There are both fines and special assessments applicable in this case. I find that Mr. Chambers does not have the ability to pay a fine, so I waive the fine in this case. Mr. Chambers

shall immediately pay the Special Assessment of $300—$100 per count—and, based on argument by counsel, he shall similarly pay the AVAA Special Assessment of $3,000.

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, and Mr. Chambers's admission to the forfeiture allegation contained in the Indictment and/or Plea Agreement, Mr. Chambers shall forfeit to the United States a Samsung Galaxy Note 10 cellular telephone.

As a final matter, there are numerous claims for restitution. Given the tremendous breadth of materials related to the requested relief, I will hold a separate restitution hearing to make a decision on the appropriate amount of restitution to order in this case.

## V.    Conditions of Supervision

*Mandatory and Standard Conditions*

The conditions of supervision, which were recommended pursuant to 18 U.S.C. § 3583(d) and as adopted by the court pursuant to General Order 2020-20, are imposed in this case.

*Special Conditions*

I find that the following special conditions of supervision, which were recommended pursuant to 18 U.S.C. § 3583(d), are reasonably related to the factors enumerated in 18 U.S.C § 3553(a)(1) and (2); further, based on the nature and circumstances of the offense and Mr. Chambers's history and characteristics, the following conditions do not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing. I note that the Special Conditions of Mr. Chambers's supervised release may not include polygraph and visual response testing. I have rejected a similar special condition requiring polygraph and visual response testing in a previous case. I maintain that "the expectation to intrude on the freedom,

20

however limited, of a person on supervised release . . . by requiring him to comply with unarticulated rules and restrictions specified by an unnamed contract agency that may presently exist or be formed in the future and comprised of individuals over whom the court has no authority or capacity to monitor" is unacceptable. *United States v. Cheever*, No. 15-cr-00031-JLK, 2016 WL 3919792, at *12 (D. Colo. July 18, 2016). This type of testing is not "permitted without the court making factual findings and conclusions on an individualized determination 'that (1) such testing will promote the goals of supervised release in relation to [the named defendant] in particular; and (2) such testing would involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release in the case of [the named defendant].'" *Id.* (quoting *United States v. Behren*, 65 F. Supp. 3d 1140, 1156 (D. Colo. 2014)).

1. Mr. Chambers must participate in a program of mental health treatment approved by the probation officer and follow the rules and regulations of such program. The probation officer, in consultation with the treatment provider, will supervise Mr. Chambers's participation in the program as to modality, duration, and intensity. Mr. Chambers must pay for the cost of treatment based on his ability to pay.

2. Mr. Chambers must participate in a sex-offense specific evaluation and/or treatment program approved by the probation officer. This may not include polygraph and visual response testing as part of the required participation.[7] If such tests are desired, they must be presented by separate motion, and an evidentiary hearing will be held to determine if such testing is appropriate and competently administered. The probation officer, in consultation with the treatment provider, will supervise Mr. Chambers's participation in and compliance

---

[7] *See generally Cheever*, 2016 WL 3919792, at *12-16.

with the treatment program, excluding unauthorized polygraph and visual testing procedures. Mr. Chambers must comply with all rules and regulations of the treatment program that are specified by the treatment agency and the probation officer. Mr. Chambers must pay for the cost of treatment based on his ability to pay.

3. Mr. Chambers's use of computers and Internet capable devices will be limited to those he requests to use and which the probation officer authorizes. The probation officer may not prohibit lawful Internet use except to impose restrictions on the types of computers or Internet capable devices that Mr. Chambers may use, to provide necessary restrictions to facilitate correctional treatment and rehabilitation, and to protect the public from any further crimes. Authorization for use of any computer or Internet capable device shall be based on the ability of the computer device to be effectively monitored by monitoring software utilized by the Probation Office. Mr. Chambers must disclose any username or identification(s) and password(s) for all computers or Internet capable devices to the probation officer.

4. Mr. Chambers must allow the probation officer to install software/hardware designed to monitor activities on any personally or family-owned, leased, or rented computer or Internet capable device he is authorized by the probation officer to use. This monitoring may record any and all activity on the device, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. Mr. Chambers must not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

5. Mr. Chambers must submit his person, and any property, house, residence, vehicle, papers, computer, Internet capable device, other electronic communications or data storage devices

or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct and by any probation officer in the lawful discharge of the officer's supervision functions.

6. Mr. Chambers must not associate with any child or children under the age of 18 except in the presence and supervision of an adult specifically designated in writing by the probation officer. The probation officer may, after obtaining Court approval, notify the designated adult of risks occasioned by Mr. Chambers's criminal record or personal history or characteristics. Mr. Chambers must permit the probation officer to make such notifications.

## VI.    Conclusion

Therefore, it is ORDERED:

- The Objection to the initial PSR, ECF No. 65, is OVERRULED as MOOT.

- The Motion for a Non-Guideline Sentence, ECF No. 66, is GRANTED in part as my sentence is not based on the Guidelines. Although the advisory Guidelines range is consistent with the sentence imposed, as I have explained I consider the advice of the advisory Sentencing Guidelines in this case, but I am not bound by that advice. I instead have based my sentence on the § 3553(a) factors. I DENY the remaining portions of the Motion, specifically Mr. Chambers's request for a 360-month sentence.

- The Motion Under U.S.S.G. § 3E1.1(b) for 1-Level Reduction of Defendant's Offense Level for Acceptance of Responsibility, ECF No. 71, is DENIED.

- The Motion to Dismiss Count 3 of the Indictment, ECF No. 72, is GRANTED.

- The parties are DIRECTED to confer and jointly email my chambers at Kane_Chambers@cod.uscourts.gov with four mutually acceptable dates for the restitution hearing on or before October 24, 2025. Should briefing be necessary, the parties should also propose the relevant dates. The Court has availability beginning November 24, 2025.

- Mr. Chambers is remanded to the custody of the U.S. Bureau of Prisons consistent with the sentence and supervised release imposed in this Order. I recommend that he be placed in a facility that offers sex offender management programs, such as FCI Marion or a similar facility.

DATED this 22nd day of October, 2025.

_John L. Kane_

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE